UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MANUEL SAUCEDO LOPEZ,

Petitioner,

v.

TIMOTHY FILSON, *et al.*,

Respondents.

Case No. 2:01-cv-00406-RCJ-NJK

ORDER

This is an action for habeas relief under 28 U.S.C. § 2254 brought by Manuel Saucedo Lopez, a Nevada prisoner sentenced to death. Respondents have filed a motion to dismiss Lopez's second amended petition for writ of habeas corpus. ECF No. 139. As the bases for their motion, respondents contend that the petition is time-barred 28 U.S.C. § 2244(d) or, alternatively, that numerous claims in the petition are time-barred and/or barred by the doctrine of procedural default. Respondents also argue that some of Lopez's claims are not cognizable in an action brought under § 2254 and that one is not ripe for habeas review.

Lopez has filed an opposition to the motion (ECF No. 172) and a motion for an evidentiary hearing (ECF No. 166).

Having considered the parties' arguments and relevant portions of the record, the court decides as follows.

I.  PROCEDURAL BACKGROUND

On January 22,1985, Lopez was charged with murder, by way of indictment, in relation to the death of his four-year old stepdaughter. After a jury trial, the Eighth

Judicial District Court for Nevada entered, on April 30, 1985, a judgment of conviction finding Lopez guilty of first-degree murder and sentencing him to death. On February 27, 1989, the Nevada Supreme Court affirmed Lopez's conviction and sentence.

Between August 1989 and December 1994, Lopez unsuccessfully pursued post-conviction relief in the Nevada courts. On June 23, 1995, he filed his first federal habeas petition, which was assigned case number CV-S-95-605-PMP(LRL). With assistance of counsel, Lopez filed an amended petition on March 13, 1997. Respondents moved to dismiss the petition as unexhausted. The court granted the motion and dismissed the petition on January 15, 1998.

Lopez's second state post-conviction proceeding spanned from March 1998 to April 2001. On April 6, 2001, he filed his second federal habeas petition, which initiated the instant case. On November 28, 2006, after protracted discovery proceedings, Lopez filed his first amended habeas petition. On June 1, 2007, the parties herein filed a stipulation to allow Lopez to return to state court to exhaust all of his claims. The court granted the stipulation and stayed the proceedings in this case.

Lopez's third state post-conviction proceeding began in June 2007 and concluded in May of 2016. On June 28, 2016, this court granted Lopez's motion to vacate the stay and reopen proceedings. He filed his second amended petition on September 6, 2016. That petition is the subject of respondents' current motion to dismiss.

II.  TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* A petitioner, like Lopez, whose conviction became final before the enactment of AEDPA had until April 24, 1997, to file a timely

federal habeas petition. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

### 1. *Initial petition.*

Respondents argue that Lopez did not initiate this proceeding until long after AEDPA's one-year period had elapsed. Respondents note that Lopez's first federal habeas proceeding did not toll the statutory period (*see Duncan v. Walker*, 533 U.S. 167, 180–81 (2001)) and that Lopez's subsequent state post-conviction proceeding did not qualify for statutory tolling under § 2244(d)(2) because it did not meet Nevada's timeliness requirements (*see Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005)). In response, Lopez argues that this court's order dismissing his case in 1998 was, in essence, a stay order. Alternatively, he contends that he is entitled to equitable tolling from April 24, 1997, until the date he filed the initial petition that began this proceeding.

When this court dismissed Lopez's first habeas petition in 1998, the accepted rule was that a district court "must dismiss" any habeas petition like Lopez's that presented both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). In dismissing the petition, the court advised Lopez that he had the option of abandoning unexhausted claims and proceeding with his petition, but made no reference whatsoever to a stay, administrative closure, or permission for Lopez to "re-open" the proceeding in the future. ECF No. 156-20. Instead, the dismissal order advised him "that failure to timely commence a *new* federal proceeding will bar Petitioner from having the validity of his conviction and/or sentence reviewed in federal court." *Id.*, p. 4 (emphasis added). The order also directed the Clerk of Court to enter judgment, which he did on January 20, 1998. *Id.*, p. 8; ECF No. 156-22, p. 6.

The court sees no factual or legal basis for treating its dismissal of Lopez's first federal proceeding as a stay. Of all the cases from this district Lopez cites as support to conclude otherwise, none of them present the same circumstances as those present in this case. ECF No. 172, p. 16-20. In addition, Lopez cites to no controlling authority that

requires this court to consider the dismissal a stay. The court in *Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015), explicitly declined to reach the issue. 788 F.3d at 723 n. 5.

Finally, Lopez alleges throughout is second amended petition in this action that the state court's resolution of a given claim was not entitled to AEDPA deference as set forth at 28 U.S.C. § 2254(d)(1). ECF No. 126; p. 33, 344, 356. By doing so, he concedes that AEDPA applies to this court's review of his current petition. This is inconsistent with his argument that this case is merely re-opening of his prior, pre-AEDPA, proceeding.

Because Lopez initiated this proceeding well beyond the AEDPA deadline, his petition is time-barred unless he can establish that he is entitled to equitable tolling. Equitable tolling is appropriate only if the petitioner can show: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Miranda*, 292 F.3d at 1065. He must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007). Lopez cites to this court's dismissal order, the uncertain nature of federal habeas law during the relevant time period, and his prior counsel's alleged abandonment of his case as grounds for equitable tolling.

Lopez is correct that this court's dismissal order was misleading in a couple of important respects. First, the order stated that the dismissal of the case triggered Lopez's one-year period under AEDPA. ECF No. 156-20, p. 4. As *Duncan* later clarified, however, the time Lopez had spent litigating his first federal petition in this court did not

4

toll the statutory period. *See* 533 U.S. at 180–81. Thus, a federal petition filed the day after the court's dismissal would have been untimely.

Second, the court explained in the order that the time Lopez spent litigating his state post-conviction proceeding would statutorily toll the period under § 2244(d)(2). ECF No. 156-20, p. 4. Even though it had been approximately nine years since Lopez's conviction had become final, there was not, at the time, significant cause to doubt the accuracy of that explanation. Indeed, the Ninth Circuit later held that a state petition was "properly filed" within the meaning of the AEDPA notwithstanding its noncompliance with Washington's rules governing time of fling. *Dictado v. Ducharme,* 244 F.3d 724, 727–28 (9th Cir. 2001). *Dictado* remained the law of the Ninth Circuit until *Pace* clarified, in April 2005, that untimely state post-conviction petitions are not "properly filed" under AEDPA, and do not toll AEDPA's statute of limitations. *See Harris v. Carter*, 515 F.3d 1051, 1053 (9th Cir. 2008) (discussing the holdings in *Dictado* and *Pace*).

Lopez presumably relied in good faith on the information in the court's dismissal order and the then-current state of AEDPA jurisprudence in choosing to return to state court rather than abandoning his unexhausted claims and proceeding with his federal petition. Neither *Duncan* nor *Pace* were decided until after Lopez had filed his initial petition in this case. The circumstances here are analogous to those in *Harris*, a case in which the Ninth Circuit concluded that a petitioner whose petition had been rendered untimely by *Pace* was entitled to equitable tolling. *See Harris*, 515 F.3d at 1057. In *Harris*, the petitioner had relied in good faith on the holding in *Dictado* "in making his tactical decision to delay filing a federal habeas petition." *Id.* at 1055.

While not an exact fit, the similarities between the cases compel this court to conclude that its 1998 dismissal order coupled with the uncertain state of AEDPA law during the relevant time period amount to extraordinary circumstances, beyond Lopez's control, that stood in the way of his compliance with the statute of limitations. With regard to diligence, respondents point out that, prior to *Duncan* and seven months prior to filing his initial petition herein, the Ninth Circuit held "that section 2244(d)(2) does not

toll the AEDPA limitations period while a federal habeas petition is pending." *See Jiminez v. Rice*, 222 F.3d 1210, 1214 (9th Cir. 2000), *reh'g granted*, *opinion withdrawn*, 246 F.3d 1277 (9th Cir. 2001), *and on reh'g*, 276 F.3d 478 (9th Cir. 2001). During that seven-month period, however, Lopez was litigating his state post-conviction appeal in the Nevada Supreme Court. ECF Nos. 152-9 through 152-26. His failure to hastily prepare a federal petition and file it in response to *Jiminez* cannot be considered lack of diligence.[1]

### 2.  Relation back.

Respondents note that, even if Lopez's initial petition is timely, his second amended petition was filed well beyond the AEDPA statute of limitations. Accordingly, they argue that all claims except for Grounds 1, 2.B. (in part),[2] 2.E, 4.A., 5, 6, 7, 11.B, 11.E, 11.F, 11.H, 11.I.1, 11.J, 11.L, 11.O, 11.P, 11.Q.2, 11.R, 11.T.9, 11.V, 12, 13.A, 17, 19, 22, 23.A, 25 (in part), and 26 of the second-amended petition are untimely because they do not relate back to the initial petition.[3]

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Mayle*, 545 U.S. at 663-64. The common core of

---

[1] Having concluded that Lopez's initial petition was timely based on the foregoing, the court need not address Lopez's assertions related to his former counsel to the extent he claims they serve as grounds for equitable tolling up to and including the date he filed his initial petition herein.

[2] Claim 2.B is a claim of prosecutorial misconduct relating to one of the State's primary witnesses, Maria Lopez, who was Lopez's wife and mother of the victim. According respondents, the only portion of the claim that relates back is that which alleges the State failed to follow statutory requirements in conferring immunity to Maria before the grand jury proceedings.

[3] Respondents initially argued that Grounds 7, 11H, and 17 do not relate back, but withdrew their arguments with respect to those claims in their reply to Lopez's opposition to the motion to dismiss. ECF No. 176, pp. 16, 22.

operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id.* at 661. The scope of Rule 15(c) must be read in light of Habeas Rule 2(c), which "instructs petitioners to 'specify all [available] grounds for relief' and to 'state the facts supporting each ground.'" *Id.* (alteration in original).

While he notes his second amended petition does not differ significantly from his first amended petition, filed November 28, 2006, Lopez does not seriously dispute that his amended petitions were both filed beyond that AEPDA deadline.[4] Lopez also offers no argument in response to respondents' claims that Grounds 3, 11.I.3, 11.K, 11.W, 14, 15, 18, 20, 24, 27, and 29 do not relate back. He does argue, however, that Grounds 2, 4.B, 8, 9, 10, 11.A, 11.C, 11.D, 11.G, 11.I.2, 11.M, 11.Q.1, 11.S, 11.T, 11.U, 11.X, 11.Y, 11.Z, 13.B, 13.C, 13.D, 16, 21, 23.B, and 28 do relate back under *Mayle*.

a. Grounds 2 and 11.X

In Ground 2, Lopez alleges numerous instances of prosecutorial misconduct, including instances of failure to disclose material exculpatory and impeachment evidence. In Ground 11.X, he claims counsel was ineffective by not challenging the State's failure to comply with its constitutional disclosure obligations.

Lopez's initial petition contains a single vague allegation that his counsel failed to discover exculpatory evidence. It does not, however, contain any allegations that the State failed to comply with its obligation to disclose evidence. In addition, Lopez's argument that the claims relate back by virtue of an attachment to his initial petition (i.e.,

---

[4] Lopez makes an argument that he is entitled equitable tolling up to the filing of his amended petition because his former counsel, Daniel Polsenberg, was associated as counsel in his first state post-conviction proceeding and continued to represent him in some capacity until allowed to withdraw from this proceeding on March 7, 2002. Citing to *Christeson v. Roper*, 135 S. Ct. 891 (2015), Lopez claims equitable tolling arises from the fact that Polsenberg could not have been expected to challenge his own performance. *Christeson* is readily distinguishable in that its holding was not that petitioner was entitled to equitable tolling, but rather, that he had been deprived of his statutory right to counsel. 135 S.Ct. at 895. Moreover, any equitable tolling arising from Polsenberg's involvement would not extend beyond March 7, 2002, the date he was replaced by the Federal Public Defender.

the Nevada Supreme Court's opinion in his direct appeal) is without merit. *See Ross v. Williams*, 896 F.3d 958, 967 (9th Cir. 2018) (noting that it would be inconsistent with AEDPA's statute of limitations to allow an attachment to a petition to serve as "a wellspring of facts" to support new claims).

Grounds 2 and 11.X do not relate back.

b. Grounds 4.B and 11.I.2

In Ground 4.B, Lopez claims the trial court improperly admitted and published a child-sized mannequin at trial. Ground 11.I.2 is a claim that trial counsel was ineffective in failing to object to the admission of hair evidence at trial. Lopez argues that these claims relate back to a claim he raised on direct appeal that was discussed in the Nevada Supreme Court's opinion, *Lopez v. State*, 769 F.2d 1276, 1285 (Nev. 1989), which was attached to his initial petition. This argument is without merit. *See Ross*, 896 F.3d at 967.

Grounds 4.B and 11.I.2 do not relate back.

c. Grounds 8, 9, and 11.Q.1

In Ground 8, Lopez challenges four specific guilt phase jury instructions: the murder by torture instruction; the involuntary manslaughter instruction; the premeditation and deliberation instruction; and the implied malice instruction. In Ground 9, Lopez specifically challenges the torture instructions given in the guilt phase and the penalty phase. In Ground 11.Q.1, Lopez challenges trial counsel's failure to object to the four instructions identified in Ground 8.

Lopez argues that these claims relate back to allegations in his initial petition asserting trial court error and ineffective assistance of counsel with regard to jury instructions. None of those allegations, however, address the specific instructions identified above. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (no relation back when the foci of the original and amended claims were different).

Lopez's additional argument that the claims relate back by virtue of attachments to his initial petition is also without merit. *See Ross*, 896 F.3d at 967.

Grounds 8, 9, and 11.Q.1 do not relate back.

d.  Grounds 9, 10, and 11.S

As noted above, Ground 9 challenges the torture instructions given in the guilt phase and the penalty phase of Lopez's trial. In Ground 10, Lopez alleges the Nevada Supreme Court conducted a faulty harmless error review upon invalidating the depravity of mind aggravating circumstance. Ground 11.S claims ineffective assistance of counsel premised on counsel's alleged failure to move to strike the depravity of mind and torture aggravating circumstances.

Lopez argues that these claims relate back to allegations in his initial petition that the "trial court erroneously instructed the jury on two aggravating circumstances, rather than one," that "the trial court gave the jury an overly broad instruction which enlarged the aggravating circumstances they consider in imposing a sentence," and there were "overlapping and vague aggravating circumstances." ECF No. 172, p. 30-31 (citations omitted).

None of the three claims at issue share a common core of operative facts with the allegations in Lopez's initial petition. Lopez's additional argument that the claims relate back by virtue of an attachment to his initial petition is also without merit. *See Ross*, 896 F.3d at 967.

Grounds 9, 10, and 11.S do not relate back.

e.  Ground 11.A

In Ground 11.A, Lopez alleges that trial counsel did not have sufficient resources to put on an adequate defense in the guilt and penalty phases of trial. Lopez's argument that the claim relates back by virtue of an attachment to his initial petition is without merit. *See Ross*, 896 F.3d at 967. In addition, there is no legal authority for Lopez's argument that Ground 11.A relates back because it is similar to Ground 12, a claim that respondents do not challenge as untimely.

Ground 11.A does not relate back.

f. Grounds 11.C and 13.B.C.D.

In Ground 11.C, Lopez claims he received ineffective assistance of counsel because counsel failed to challenge the indictment against him on the grounds that Maria Lopez was improperly granted immunity and that the prosecutor made material misstatements of law to the grand jury. Grounds 13.B.C.D. allege, respectively, that the State failed to extend Maria's immunity to post-trial proceedings, made material misstatements to the grand jury about Maria's culpability, and failed to corroborate Maria's testimony. Lopez argues that these claims relate back to allegations in his initial petition that counsel "unreasonably failed to raise on appeal the issue of the immunity granted to Maria Lopez, the state's key witness." and that the trial court erred in granting immunity to Maria Lopez. ECF No. 172, p. 31.

The initial petition makes no mention of counsel failing to challenge the indictment or the prosecutor's alleged misstatements of law to the grand jury. It also does not refer, in any manner, to the State failing to extend immunity to post-trial proceedings or to corroborate her testimony.

Grounds 11.C and 13.B.C.D do not relate back.

g. Grounds 11.D, 11.G, and 16

In Ground 11.D, Lopez claims counsel was ineffective by failing to seek a change of venue due to pre-trial publicity. In Ground 11.G, he alleges that counsel performed ineffectively in voir dire proceedings "by failing to ask some of the jurors about exposure to pretrial publicity, failing to ask about exposure to childhood and domestic abuse, failing to ask the jurors whether they could consider life with or without parole based on the facts as alleged by the prosecution, and in acquiescing in the removal of a death scrupled juror without raising an objection." ECF No. 126, p. 254. Ground 16 is a claim that the trial court erred by failing to change the venue of the trial.

Lopez points out the that respondents acknowledge that Ground 11.E regarding trial counsel's failure to voir dire jurors about child abuse relates back to the initial petition. He argues that Grounds 11.D and 11.G should relate back for similar reasons.

He also points out that he alleged in the initial petition that the trial court allowed extensive and intense media coverage and did not sequester the jury until deliberations.

This court agrees that Ground 11.G relates back to the allegation in Lopez's initial petition that counsel failed to make an adequate voir dire. The other two claims, however, do not share a common core of operative facts with the allegations in the initial petition. Lopez's additional argument that the claims relate back by virtue of attachments to his initial petition is also without merit. *See Ross*, 896 F.3d at 967.

f.  Ground 11.M

In Ground 11.M, Lopez alleges that counsel was ineffective by not using a note Maria Lopez wrote to him to cross-examine her and to rehabilitate him. Lopez's contention that this claim relates back to an allegation in his initial petition regarding counsel's failure to preserve documentary evidence is plainly without merit. And, once again, Lopez cannot rely on unreferenced attachments as a source of facts to which later claims may relate back. *See Ross*, 896 F.3d at 967.

g. Grounds 11.T and 11.U

In Ground 11.T, Lopez claims counsel was ineffective by failing to present mitigating evidence in the penalty phase of his trial. In Ground 11.U, he claims that counsel was ineffective in his closing argument in the penalty phase.

Ground 11.T relates back to Lopez's allegations in his initial petition. ECF No. 1, p.4. Ground 11.U does not.

h. Grounds 11.Y, 11.Z and 28

Grounds 11.Y, 11.Z and 28 are cumulative error claims that relate back to the initial petition. ECF No. 1, p. 12.

i. Ground 21

In Ground 21, Lopez alleges that his rights under the Confrontation Clause were violated by the admission of statements his victim made to Maria Lopez and statements Maria made to state expert Dr. Strauss. The core of operative facts supporting this claim

are not found in Lopez's initial petition. Lopez cannot establish relation back by citing to attachments to the initial petition. *See Ross*, 896 F.3d at 967.

Ground 21 does not relate back.

j.  Ground 23.B

In Ground 23.B, Lopez claims his death sentence is invalid because the jury was improperly instructed that it had to be unanimous in order to find the existence of mitigating circumstances. The initial petition makes no reference to the mitigation instruction being defective on this basis.

Ground 23.B does not relate back.

3.  *Timeliness under § 2244(d)(1)(B & D).*

Other triggering dates under the AEDPA statute of limitations include "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action" (28 U.S.C. § 2244(d)(1)(B)) and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (28 U.S.C. § 2244(d)(1)(D)). Lopez argues that State actions or omissions render Grounds 2. 10, 11.X, and 14 timely under these provisions and the equitable tolling doctrine.

Despite Lopez's citation to § 2244(d)(1)(B), he offers very little, if any, argument to show that a "violation of the Constitution or laws of the United States" prevented him from filing his petition. A claim under this provision "must satisfy a far higher bar than that for equitable tolling." *Ramirez v. Yates*, 571 F.3d 993, 1000 (9th Cir. 2009). In addition, § 2244(d)(1)(B) permits a later filing date only if the impediment "altogether prevented him from presenting his claims in *any* form, to *any* court." *Id.* at 1000 (emphasis in original).

Even if the State improperly failed to disclose information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Lopez would need to show that the non-disclosure *prevented* him from filing his federal petition, which he has not done. *See Wood v.*

12

*Spencer*, 487 F.3d 1, 7 (1st Cir.2007) (prosecutor's failure to produce *Brady* material was not an impediment to petitioner filing his habeas corpus petition). Thus, Lopez must establish that the relevant claims are timely under § 2244(d)(1)(D).

   a. Grounds 2 and 11.X

   As noted above, Ground 2 alleges numerous instances of prosecutorial misconduct. Among them are claims that the State presented false testimony and failed to disclose material exculpatory and impeachment information relating to Arturo Montes (Claim 2.A), Maria Lopez (Claim 2.B), and forensic evidence (Claim 2.C). Ground 11.X is a claim that counsel provided ineffective assistance by not challenging the State's failure to comply with its constitutional disclosure obligations.

   "The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim 'could have been discovered through the exercise of due diligence,' not when it actually was discovered." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(1)(D)). To take advantage of § 2244(d)(1)(D), Lopez must show he was unable to discover the relevant information earlier despite his exercise of "reasonable diligence." *See Quezada v. Scribner*, 611 F.3d 1165, 1168 (9th Cir. 2010). In this case, the question is whether Lopez did not have, or with the exercise of due diligence could not have had, knowledge of the factual predicates of his claims until or after November 28, 2005, one year prior to the filing of his amended petition. *See Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001) (explaining the relevant dates under § 2244(d)(1)(D) for district court to consider on remand).

   <u>Arturo Montes</u>

   Montes testified at trial that he lived on the same street as Lopez and witnessed an incident in which Lopez came to get the victim, Jessica, who was playing with his son, Peter. ECF No. 141-22, p. 215-227. He further testified that Lopez picked up Jessica by her hair, then dragged her home. *Id.*

   The evidence Lopez relies upon to show that Montes provided false testimony includes the following: (1) evidence showing that Montes was in jail during the time that,

according to his testimony, he observed of the alleged act of abuse (ECF No. 90-2, p. 379-382); (2) a declaration from Montes's half-brother, dated November 16, 2004, indicating that Montes did not have a son named Peter, or any son for that matter, and that he had a reputation as a serial liar (ECF No. 90-2, p. 125-26); (3) a declaration from Rosalinda Ceballos, dated October 19, 2004, stating that she is the wife of Antonio Ceballos, Maria Lopez's uncle, and that, contrary to Montes's testimony at trial, Montes was not a friend of the Ceballos family, nor did he baptize her daughter (*Id.*, p. 140-44); and (4) a declaration from Montes, dated November 19, 2004, admitting that his trial testimony was fabricated and "fed to [him] by the prosecutors" (*Id.*, p. 123-24).

The evidence Lopez relies upon to show that the State failed to comply with constitutional disclosure obligations includes the following: (1) Montes's criminal history information and other documents indicating that his name is spelled with an "s," not a "z," which, according to Lopez, show that the State presented him under an alias at trial (ECF No. 90-2, p. 334-364); (2) a declaration from a police detective, Randolph Wohlers, dated July 14, 2006, in which he states that he did not have a secondary assignment with the police department, which, according to Lopez, is contrary to his trial testimony that he had located Montes while working that assignment (ECF No. 90-2, p. 1095-1100); (3) documents establishing that Montes was subject to active bench warrants that were suspended during the time of his cooperation with the police in Lopez's case (ECF No. 90-2; pp. 334-64, 379-82); (4) a Nevada Law Enforcement Tracking printout showing that Montes had fraudulently obtained a driver's license using an alias (ECF No. 90-2, p. 1101-02), and (5) witness vouchers showing that the State was paying "witness fees" to Montes during the time he was being interviewed by prosecutors (ECF No. 90-2, p. 365-67).

In a discovery motion filed in August 2002, Lopez expressed concerns about Montes's credibility and the State's "knowing use of Mr. Montes' false statements," noting, among other things, the alternate spelling of his last name. ECF No. 30, p. 20-23. In opposing respondents' motion to dismiss, Lopez does not identify the dates he

obtained much the information discussed above, but it is clear that much of it was in his

possession at least a year prior to November 28, 2005, and two years prior to the date

he filed his first amended petition. For example, the records supporting his claim that

Montes was in jail during the time claims to have observed of the alleged act of abuse

were known to Lopez prior to obtaining Montes declaration in November 2004. ECF No.

63, p. 9. Unlike in *Quezada*, a case on which Lopez heavily relies, there is no showing

that Lopez did not receive critical information to support his claim until after November

28, 2005. *See Quezada*, 611 F.3d at 1167-68 (explaining that claim based on withheld

witness compensation information was timely because State had denied the existence

of the information and petitioner brought the claim within a year of discovering witness

had admitted to being compensated). Thus, Ground 2.A is not timely under

§ 2244(d)(1)(D).

<u>Maria Lopez</u>

As noted, Maria Lopez was one of the State's primary witnesses against Lopez.

In March 1987, Lopez filed a motion for new trial based on Maria's recantation of her

trial testimony ECF No. 145-11. Less than a week after that motion was denied, Lopez

sought rehearing based on information from Detective Wohlers confirming that he had

made promises to Maria from the *outset* of his investigation in relation to her

immigration status and social services benefits, which was contrary to representations

by the prosecutor that the promises were made only after Maria had provided grand jury

testimony. ECF No. 145-26.

Lopez identifies the following as "newly discovered evidence," in support of

Ground 2.B, that he obtained for the first time in the course of federal court discovery

proceedings: (1) a copy of an interrogation tape of the first formal statement Maria gave

to police containing information that was omitted from the statement given to the

defense at trial – most notably, that it was Maria who took Jessica out of the bathtub

when she was burned and that the detectives discussed releasing Maria despite not

having more information from her about Jessica's injuries (ECF No. 90-2, 388-407); (2)

a Notice of Denial of Request to prosecute Maria issued January 16, 1985, prior to law enforcement obtaining detailed information from her about the circumstances surrounding Jessica's death (*Id.*, p. 200-01); (3) the statement from Maria's aunt, Rosalinda, mentioned above, in which Rosalinda also stated that police detectives threatened Maria that only one person would be charged with Jessica's murder, either Lopez or her (*Id.*, p. 140-44); (4) the statement from Detective Wohlers, mentioned above, in which he also states that fear of deportation was Maria's primary concern upon being arrested (*Id.*, p. 1095-1100); (5) INS documents which, according to Lopez, suggest that efforts were being made to obtain a permanent immigration status for Maria, not temporary as she had indicated in her testimony at trial (*Id.*, p. 213-18); (6) a state court order authorizing the issuance of a suspended material witness warrant to be held by Detective Wohler and served on Maria if she did not comply with "specifications set by [the] Court," which were never disclosed (*Id.*, p. 279-280); (7) an *ex parte* motion for a Maria's deposition, prepared by the prosecutor, but not filed, that referred to the aforementioned specifications and expressing concern that Maria may flee the jurisdiction before the material witness warrant could be executed (*Id.*, p. 281-83); (9) notes from a February 1985 interview of Maria taken by a counselor with the Nevada Association of Latin Americans, Rosaura Tanon, indicating that Maria showed no signs of sorrow or remorse, seemed more concerned about deportation than the outcome of Lopez's trial, and that Maria told her that she did not get help for Jessica because Jessica begged her not to tell anyone about the abuse (*Id.*, p. 304-08); and (10) a declaration from Ted Salazar, another counselor, and correspondence to Salazar from the district attorney's office confirming that Salazar was retained and paid by the prosecutor to act as an interpreter in preparing Maria for trial, the circumstances of which were either not disclosed or belatedly disclosed to the defense (*Id.*, p. 309-11, 325-28).

    In the discovery motion filed in August 2002, Lopez articulated in significant detail his reasons for further developing the grounds for relief now contained in Ground 2.B.

ECF No. 30, p. 17-20. Here again, it is not clear on what dates Lopez obtained much the information related to Maria discussed above, but the court presumes that that, like the Montes information, much of it was in his possession at least a year prior to November 28, 2005. The transcription of the tape of the detectives' initial formal interview with Maria appears to have been sent to Lopez's counsel on or about Feb 10, 2004. ECF No. 90-2, p. 389. Other documents include a stamp in the lower right-hand corner showing they were received by Lopez's counsel prior to 2005 (for example, the Notice of Denial of Request appears to have been received May 12, 2003 (ECF No. 90-2, p. 201)). In any case, Lopez does not establish that the factual predicate of Ground 2.B was not, or could not have been, discovered, through the exercise of reasonable diligence, prior to November 28, 2005.

<u>Forensic evidence</u>

Ground 2.C alleges that the prosecutor withheld evidence and/or presented false evidence relating to (1) the extensions chords presented at trial, (2) a single hair fiber purportedly found on a black belt, (3) a single hair fiber purportedly found on a red extension cord, (4) the search of Lopez's home, and (5) the processing of hair evidence.

Lopez claims the State failed to disclose that, the day after Lopez was sentenced to death, the prosecutor gave Detective Wohlers a brown extension cord to book into evidence. The chord had been given to the prosecutor by Maria Lopez, but never disclosed to the defense or introduced at trial. This information was memorialized on a property report and admitted to in the declaration by Detective Wohlers. ECF No. 980-2, pp. 118-19, 1099. It appears from the record that Lopez received the report in May 2003 pursuant to a subpoena served on the North Las Vegas Police Department. ECF No. 63, p. 57; ECF No. 90-2, p. 119.

The only other portion of Ground 2.C for which Lopez argues timeliness under § 2244(d)(1)(D) is the processing of hair evidence. At trial, the State presented the testimony of hair expert, Dan Berkabile. ECF No. 141-23, p. 176-214. He testified about hair comparisons he made between Jessica's hairs and hairs found at the Lopez

residence, including clumps of hairs reported to have been found in waste baskets and hairs reported to have been found on various items including extension cords, a belt, and a macramé holder. *Id.*

Lopez cites to discrepancies between the Berkabile's analysis of the hair evidence and descriptions of the evidence contained in "bench notes" authored by police criminalist Carla Noziglia.[5] On June 28, 2006, this court granted Lopez leave to serve a subpoena to depose Berkabile. ECF No. 84. In that deposition, Berkabile conceded that, contrary to his trial testimony, he and Noziglia were not analyzing the same hair evidence. ECF No. 90-2, p. 831-33. Based on this, this court concludes that Ground 2.C is timely as to the portion of the claim alleging false testimony and improper non-disclosure in relation to the processing of hair evidence. The claim is otherwise barred as untimely.

Lopez offers no argument that the factual predicates of Grounds 2.D and 2.F were not discoverable by exercise of reasonable diligence prior to November 28, 2005. For the foregoing reasons, Ground 2 is time-barred (except for the portions of Grounds 2.B and 2.C identified above and 2.E).

b. Ground 10

As noted above, Ground 10 is a claim that the Nevada Supreme Court conducted a faulty harmless error review upon invalidating the depravity of mind aggravating circumstance. Lopez points out that the claim challenges the Nevada Supreme Court's decision in his third state post-conviction proceeding, which was issued on October 23, 2015. Because his second amended petition containing the claim was filed within one-year of the decision. Ground 10 is timely.

c. Ground 14

---

[5] In his second amended petition and in opposing respondents' motion to dismiss, Lopez makes repeated references to Noziglia's "bench notes," which he cites as Exhibit 14 (ECF No. 90-2, p. 103-05) to his petition. ECF No. 126, p. 108-09; ECF No. 172, p. 59. However, that exhibit appears to be a report, not bench notes, and it does not appear to contain the description of the lengths of the hairs upon which Lopez relies. Even so, the court notes that the transcript of Berkabile's deposition appears to confirm that such notes exist as described in Lopez's pleadings. ECF No. 90-2, p. 824-833.

In Ground 14, Lopez alleges that the grand jury that returned the indictment against him was unconstitutionally selected. Lopez admits to having discovered the information serving as the factual predicate of this claim in 2003. ECF No. 172, p. 60. Ground 14 is time-barred.

Finally, there is no merit to Lopez's arguments that he is entitled to equitable tolling for Grounds 2, 11.X, and 14 due to discovery delays caused by the State and this court's scheduling orders. Early in these proceedings, the court made clear its desire to have these proceedings move forward expeditiously. ECF No. 23, p. 2-3. At no point did the court affirmatively mislead Lopez to believe that claims contained in his amended petition that did not relate back to his earlier petition would nonetheless be considered timely. *Cf. Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013). In addition, he has not shown that the State withheld any evidence that prevented him from filing his claims in a timely manner.

## III. PROCEDURAL DEFAULT

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*,

202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*

Respondents argue that Grounds 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 18, 19, 20, 22, 23, 24, 25, 26, 28, 29 and portions of Grounds 2, 11, 13, 17, 21, and 27 are procedurally defaulted and must be dismissed.

Respondents point out that, in Lopez's second state post-conviction proceeding, the Nevada Supreme Court concluded that Lopez's petition had been untimely filed under Nev. Rev. Stat. § 34.726 and was a successive petition under Nev. Rev. Stat. § 34.810. ECF No. 152-25. Accordingly, respondents argue that the following claims presented for the first time in that proceeding are procedurally defaulted: Ground 4.A, Ground 5, Ground 6; Ground 7, Ground 11J (part), Ground 11.Q.2 (part), Ground 19, Ground 22, Ground 23.A, and Ground 25 (part).

Respondents further point out that, in Lopez's third amended proceeding, the Nevada Supreme Court once again imposed the same procedural bars – i.e., Nev. Rev. Stat. § 34.726 and Nev. Rev. Stat. § 34.810. ECF No. 156-12. Accordingly, respondents argue that the following claims presented for the first time in that proceeding are procedurally defaulted: Ground 2 (with the exception of 2.B.5.i & j ), Ground 3, Ground 4.B, Ground 5, Ground 8, Ground 9, Ground 10, Ground 11C, Ground 11.D; Ground 11.G, Ground 11.I.2, Ground 11.I.3, Ground 11.J (regarding in limine motions), Ground 11.K. Ground 11.L (paragraph 3), Ground 11.N, Ground 11.Q.1, Ground 11.Q.2 [– paragraph ii], Ground 11.S, Ground 11.U, Ground 11.X, Ground 11.Z, Ground 12 (as to constructive denial of rights), Grounds 13.B, 13.C, 13.D, Ground 14, Ground 15, Ground 16, Ground 18, Ground 20, Ground 21.B, Ground 23.B, Ground 24; Ground 25 (part), Ground 26, Ground 27 (except paragraphs 7 and 8), Ground 28, and Ground 29.

With respect to Nev. Rev. Stat. § 34.726, the Ninth Circuit Court has repeatedly rejected the argument that the Nevada Supreme Court has inconsistently applied that statute and has held it to be adequate to support application of the procedural default doctrine. *See Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996). Lopez's arguments do not place the adequacy of the rule at issue, so as to shift the burden to respondents. Accordingly, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of Lopez's defaults.

In addition, this court does not agree with Lopez's argument that Nev. Rev. Stat. § 34.726 does not bar claims presented in his second state post-conviction proceeding because the Nevada Supreme Court did not make a plain statement that it was applying the rule. The Nevada Supreme Court merely made an alternative ruling that, even if § 34.726 did not bar Lopez's petition, it would nonetheless be barred under § 34.810. ECF 152-25, p. 3-4.

With respect to Nev. Rev. Stat. § 34.810, there are Ninth Circuit cases holding the bar inadequate. *See Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002), *Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001), and *McKenna v. McDaniel*, 65 F.3d 1483, (9th Cir. 1995). The relevant dates in *McKenna* and *Petrocelli* were 1983 and 1985. *See McKenna*, 65 F.3d at 1487-88; *Petrocelli*, 248 F.3d at 886. The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778. While respondents claim that the Nevada Supreme Court has cited the provision 1,200 times, they have not met "the burden of demonstrating that, since *Valerio*, state courts have begun to regularly and consistently apply § 34.810 to habeas cases." *Riley v. McDaniel*, 786 F.3d 719, 722 n. 4 (9th Cir. 2015).[6]

With respect to Ground 2, Lopez argues that the claim is not procedurally barred because Nevada's default rules are intertwined with federal law as applied to Ground 2 asserting prosecutorial misconduct. Lopez notes that the Nevada Supreme Court, in his third state post-conviction proceeding, relied on a *Brady* analysis in determining whether he could establish cause to and prejudice for the default of his *Brady* claims. ECF No. 156-12, p. 4. This argument has merit as to the portions of Ground 2 alleging a violation of *Brady* and its progeny. *See Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011) ("In this case, the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling the outcome of its state procedural default analysis.").

---

[6] This is not to say that Nevada courts have not consistently and regularly applied the bar during the relevant time period. Respondents simply have not met their burden under *Bennett* by citing to actual cases demonstrating such application.

As explained above, however, the only *Brady* claim in Ground Two that is not time-barred is the portion of Ground 2.C alleging that the State presented false testimony and improperly withheld evidence in relation to the processing of hair evidence. Thus, the court concludes that that portion of Ground 2.C is not barred by the doctrine of procedural default.[7] In addition, The Nevada Supreme Court also addressed Grounds 9 and 10 on the merits, so those claims are not procedurally defaulted.[8] ECF No. 156-12, p. 12-13.

In summary, Nev. Rev. Stat. § 34.726 was an independent and adequate state rule imposed against claims first presented in Lopez's second and third state post-conviction proceedings (other than those excepted above). Thus, this court is procedurally barred from reviewing those claims unless Lopez can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice

Lopez argues that any procedural default or untimeliness of his claims may be excused because he is actually innocent of first-degree murder and the death penalty. A showing of "actual innocence" is a recognized method for a petitioner to establish a miscarriage of justice sufficient to avoid procedural bars to consideration of the merits of his petition. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995). The actual innocence gateway is also available to bypass the expiration of the statute of limitations under § 2244(d). *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)

Under *Schlup*, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-

---

[7] Because Lopez's *Brady* claims are not barred by the procedural default doctrine, the court need not address his arguments that he can establish cause and prejudice based on the State's non-disclosure of evidence.

[8] As discussed above, however, Ground 9 is time-barred.

28). The petitioner must establish his factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). Moreover, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). As such, a petitioner cannot meet the gateway actual-innocence standard by merely alleging that there was insufficient evidence presented at trial to support a finding of guilt. *See House v. Bell*, 547 U.S. 518, 538 (2006).

Here, Lopez claims that he can establish his actual innocence of first-degree murder based on Maria's recantation, Montes's recantation, and weaknesses in the physical evidence presented at trial. Having reviewed the evidence, this court is not persuaded that it is sufficient to meet the relevant standard.

Maria's recantation occurred in 1987, is very vague, and, with respect to specific acts, disclaims only that Lopez was responsible for Jessica being burned in the bathtub and that he hung her by her hair with a macramé holder on New Year's Eve. ECF No. 90-2; pp. 40, 148-56. Notably, she did not disclaim her other testimony that, as recounted by the Nevada Supreme Court, included Lopez "beating Jessica twice a day with a belt because of the child's incontinence," "grabbing her by the hair and dashing her against the toilet bowl," "stripping her and tying her up in a nearby shed," "leaving Jessica in a bathtub filled with cold water for two hours, and afterwards, when she could not stop shivering and would not react, forcing her to drink a half glass of whiskey," "forcing the child to eat her own feces," and "the night before Jessica died, trying to force her to get up and walk, and when she was unable to do so, grabbing her by the hair, throwing her against the wall, and striking her with a belt." *Lopez v. State*, 769 P.2d 1276, 1279 (Nev. 1989). In addition, the doctor who examined Jessica, post-mortem, testified that he found, not only burns, but also "extensive bruising about the right hip and both arms, in particular numerous small bruises spaced about the right upper arm

suggesting forcible grasping by fingers or a hand; . . . a swollen upper lip, a 'black eye' appearance around both eyes and several bruises about the forehead; and . . . hair missing from part of the scalp." *Id.* Finally, allegations that Maria receive undisclosed benefits in relation to her testimony is not the type of "new reliable evidence" contemplated by *Schlup*.

Evidence that Montes's trial testimony was mostly, if not entirely, fabricated is troubling. It cannot be said, however, that in the absence of his testimony it is more likely than not that no reasonable juror would have convicted Lopez. The same is true with respect to possible discrepancies with respect to the hair evidence. Evidence other than hair comparison analysis supported a finding that Jessica had been hung by her hair (or at least that significant of amounts of her hair had been pulled out prior to her death). Moreover, the hair comparison evidence comprised only part of the evidence substantiating the extreme physical abuse Jessica endured prior to her death. It by no means establishes that Lopez is actually innocent.

With respect to establishing that he is actually innocent of the death penalty, Lopez must demonstrate "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992); *see Schlup*, 513 U.S. at 327 (recognizing the "clear and convincing" standard under *Sawyer* imposes a higher burden of proof than a showing of "more likely than not"). The *Sawyer* standard can be met by "showing that there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.* at 345.

In claiming that he is actually innocent of the death penalty, Lopez point out the one of the aggravating circumstances found by the jury (depravity of mind) has been invalidated by the Nevada Supreme Court. He further argues that he is not guilty of the other circumstance – torture – because the jury was not properly instructed that, under Nevada law, torture as an aggravating circumstance requires evidence that he "intended to inflict pain beyond the killing itself" and that the acts of torture were done

with the "specific intent . . . to inflict pain for pain's sake or for punishment or sadistic pleasure." ECF No. 172, p. 74 (citing *Domingues v. State*, 917 P. 2d 1364, 1377 (Nev. 1996).

Even if issued proper instructions, however, a reasonable jury could have found that Lopez's conduct satisfied the definition of torture. *See Jenkins v. Hutton*, 137 S. Ct. 1769, 1772 (2017) (where instructional error is the subject of a *Sawyer* inquiry, reviewing court must decide whether, given *proper* instructions, a reasonable jury could have found petitioner eligible for death penalty). Lopez argues that there was no evidence that Lopez intended to inflict pain for sadistic pleasure, but there was evidence that he intended to do so for punishment. In addition, evidence that Lopez administered extreme physical abuse over a period of several weeks was sufficient to establish that it was he intended to inflict pain beyond the killing itself.

Next, Lopez argues that he can establish cause and prejudice for claims that served as the basis for ineffective assistance of counsel claims properly presented in his first state post-conviction proceeding. There is no merit to this argument. *Trial* counsel's alleged ineffectiveness in failing to identify or raise an issue cannot serve as cause for Lopez's failure to properly present the issue in his direct appeal or in his first state post-conviction proceeding. Lopez's reliance on *Edwards v. Carpenter*, 529 U.S. 446 (2000), as support for his argument is misplaced in that the petitioner in that case was asserting ineffectiveness of *appellate* counsel as cause for his default. 529 U.S. at 449. To the extent Lopez may claim that his appellate counsel's ineffectiveness was the cause for his procedural defaults, he must show that that claim itself was properly presented to the state courts, which he has not done. *See id.* at 453 (holding "that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Lastly, Lopez argues that he can overcome any procedural default Ground 8.C and 14. Because those claims are time-barred, the court declines to address those arguments.

IV. COGNIZABILITY

Respondents challenge whether several of Lopez's claims are cognizable in this federal habeas proceeding.

First, they note, with respect to Ground 3 of Lopez's petition, that neither the U.S. Supreme Court nor the Ninth Circuit has decided that a petitioner may obtain habeas relief based on a freestanding claim of actual innocence. For reasons discussed above, however, Lopez is unable to meet the exacting standard necessary to establish actual innocence. Thus, Ground 3 is denied on that basis.

Next, they argue that Grounds 13.B, 17, and 27 are not cognizable to the extent they challenge state habeas proceedings. Respondents are correct. *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir.1997) (errors committed during state post-conviction proceedings are not cognizable in a federal habeas action). The court will not consider the portion of Ground 17 alleging error in state post-conviction proceedings.[9]

Finally, respondents contend the Ground 29, wherein Lopez challenges the constitutionality of lethal injection as a method of execution, is not currently ripe for this court's review because Lopez's execution is not currently set. The court agrees that the claim is premature and, therefore, will dismiss it without prejudice on that basis. *See Roybal v. Davis*, 148 F. Supp. 3d 958, 1107 (S.D. Cal. 2015). The court declines to weigh in on whether such a claim must be brought under 42 U.S.C. § 1983, as opposed to a federal habeas proceeding.

V. MOTION FOR EVIDENTIARY HEARING

With his motion for an evidentiary hearing, Lopez argues that he is entitled to a hearing to present evidence in support of his opposition to respondents' motion to dismiss. ECF No. 166. He identifies the following issues as those which warrant a hearing: (1) the issue of cause and prejudice to overcome any state procedural default; (2) the timeliness of the first amended petition; (3) his entitlement to equitable tolling; and (4) the non-independence and inadequacy of Nevada's procedural default bars.

[9] Grounds 13.B and 27 are time-barred.

The court has fully considered the opposing points and authorities in relation to respondents' motion to dismiss. In deciding the motion as set forth above, the court finds that there are no material factual disputes that require the presentation of evidence that is not already in the court's record. Accordingly, petitioner's motion for an evidentiary hearing is denied.

## VI. CONCLUSION

Based on the foregoing, the following claims are time-barred under § 2244(d): Grounds 2 (except 2.E and parts of 2.B and 2.C),[10] 4.B, 8, 9, 11.A, 11.C, 11.D, 11.I.2, 11.I.3, 11.K, 11.M, 11.N, 11.Q.1, 11.S, 11.U, 11.W, 11.X,[11] 13.B, 13.C, 13.D, 14, 15, 16, 18, 20, 21, 23.B, 24, and 27.

Of the claims that are not time-barred, the following claims are barred by the doctrine of procedural default: Grounds 2 (except part of 2.C),[12] 3, 4.A, 5, 6, 7, 11.G, 11.I.3, 11.J, 11.L, 11.Z, 13.B, 13.C, 13.D, 19, 22, 23.A, 25, 26, and 28.

Ground 3 is denied on the merits. Ground 29 is dismissed without prejudice as premature.

IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 139) is GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER ORDERED that respondents shall have **sixty (60) days** from the date on which this order is entered within which to file their answer to the remaining claims in petitioner's second amended petition (ECF No. 126). In all other respects, the scheduling of this matter is governed by the scheduling order entered June 28, 2016 (ECF No. 124).

---

[10] The part of Ground 2.B that is not time-barred is the part that alleges the State failed to follow statutory requirements in conferring immunity to Maria before the grand jury proceedings. The part of Ground 2.C that is not time-barred is that part alleges the State offered false testimony and a failed to disclose evidence in relation to the processing of hair evidence.

[11] Except to the extent Lopez alleges ineffective assistance of counsel in relation the portion of Ground 2.C that is not time barred.

[12] The part identified in footnote 10.

IT IS FURTHER ORDERED that petitioner's motion for an evidentiary hearing (ECF No. 166) is DENIED.

IT IS THEREFORE ORDERED that respondents' motion for extension of time (ECF No. 177) is GRANTED *nunc pro tunc* as of June 19, 2018.

DATED THIS 27th day of September, 2018.

_____

UNITED STATES DISTRICT JUDGE