UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MANUEL SAUCEDO LOPEZ,<br><br>               Petitioner,<br>v.<br><br>WILLIAM GITTERE, *et al.*,<br><br>               Respondents. | Case No. 2:01-cv-00406-RCJ-NJK<br><br>ORDER |

Petitioner Lopez has filed a motion for partial reconsideration of this court's order of September 27, 2018 (ECF No. 182), which included a determination that several of Lopez's habeas claims are time-barred under § 2244(d). ECF No. 217. Lopez argues that the Ninth Circuit's en banc decision in *Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020), requires this court to revisit its ruling that many of the claims in his second amended petition do not relate back to his initial petition under Fed. Rule Civ. Proc. 15(c)(2). For reasons that follow, the motion is granted in part and denied in part.

In *Ross*, the court reversed a three-judge panel's decision[1] and held that "'for all purposes,' including relation back, the original petition consists of the petition itself and any 'written instruments' that are exhibits to the petition," which may include a state court brief or court decision. 950 F.3d at 1167 (quoting Fed. R. Civ. P. 10(c), internal

---

[1] *Ross v. Williams,* 896 F.3d 958 (9th Cir. 2018).

brackets omitted). Determining "whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims" requires a two-step analysis. *Id*. First, the court must "determine what claims the amended petition alleges and what core facts underlie those claims." *Id*. Second, "for each claim in the amended petition," the court must examine "the body of the original petition and its exhibits" to see whether the pleading set out or attempted to set out "a corresponding factual episode," or "whether the claim is instead supported by facts that differ in both time and type" from those in the original petition. *Id*.

Lopez correctly argues that this court, relying on the three-judge panel decision in *Ross*, rejected the notion that attachments to his initial petition could provide the facts to form the basis for relation back. *See* ECF No. 182 at 8-12 (citing *Ross*, 896 F.3d at 967). Accordingly, he asks the court to reconsider its dismissal of the following claims: Grounds 2, 8(B), 9, 10, 11(A), 11(D), 11(M), 11(S), 11(X), 16, and 21(B).[2]

Respondents advance the following three arguments in opposition to reconsideration. First, this court should hold off deciding Lopez's motion for reconsideration until the U.S. Supreme Court rules on the State's petition for writ of certiorari in *Ross*. Second, Lopez's case is factually distinguishable from *Ross*. Third, Lopez's claims do not relate back even when the holding in *Ross* is applied.

Respondents' first argument is a non-starter as the U.S. Supreme Court denied certiorari on November 9, 2020. *See Daniels v. Ross*, No. 20-86, 2020 WL 6551908 (U.S. Nov. 9, 2020).

In claiming that this case is factually distinguishable, respondents first argue that Lopez, unlike the petitioner in *Ross*, did not "set out or attempt to set out" facts contained in attachments to his initial petition because he did not incorporate the attachments by reference within the body of the petition. The court in *Ross* did not,

---

[2] While the court concluded that Ground 10 did not relate back to the initial petition, it determined that the claim was timely for a separate reason. ECF No. 182 at 18. In addition, respondents have answered the claim on the merits. ECF No. 207 at 12-13. Thus, Ground 10 is omitted from further consideration in this order.

2

however, impose such a requirement and rejected the State's argument that a petition can only incorporate an attachment by "clear and repeated" references to it. *Ross*, 950 F.3d at 1169.

Even so, while attachments can provide the necessary facts to support relation back, the initial petition itself must at least identify specific grounds for relief to which the facts relate. *Id*. at 1167. ("If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back."). Thus, even under *Ross*, facts contained in attachments to the initial petition cannot provide the basis for relation back if they are not related to grounds for relief asserted within the initial petition. *Id*. at 1168 ("If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back.").

The other factual distinction respondents cite is that Lopez had the assistance of counsel when he filed his initial petition while the petitioner in *Ross* did not. This argument is also without merit in that the *Ross* court noted in a footnote that Ross's pro se status provided an *additional* ground for reversal beyond reasons outlined in the body of its opinion. *See id*. at 1173 n. 19 ("Although the reasons given above suffice to require reversal here, we also note that courts are obligated to 'liberally construe[ ]' documents filed pro se, like Ross's original petition.").

Having concluded that its prior relation back rulings must be reconsidered under the framework established in *Ross*, the court will address the specific claims identified for reconsideration by Lopez. With respect to some of the claims Lopez presents labyrinthine arguments attempting to connect the allegations in his initial petition and exhibits to the those in his second amended petition. Those arguments notwithstanding, this court adheres to the two-step analysis explained in *Ross* and confines its

consideration to claims in the initial pleading and the facts in the attachments that correspond to those claims.

1. Grounds 2(A, B, C) and 11(X).

In Ground 2, Lopez alleges numerous instances of prosecutorial misconduct, including presentation of false evidence and failure to disclose material exculpatory and impeachment evidence. This court previously determined that parts of Ground 2 are procedurally defaulted in addition to being time-barred. The parts of Ground 2 that are not procedurally defaulted are Grounds 2(A, B, C).

In Ground 2(A), Lopez alleges the State presented the false testimony of Arturo Montes and failed to disclose material exculpatory and impeachment evidence related to Montes. In Ground 2(B), Lopez alleges the State presented the false testimony of his wife Maria Lopez and failed to disclose material exculpatory and impeachment evidence related to Maria. In Ground 2(C), Lopez alleges the State presented false testimony related to forensic evidence and failed to disclose material exculpatory and impeachment evidence related to that evidence. In Ground 11(X), Lopez claims counsel was ineffective by not challenging the State's failure to comply with its constitutional disclosure obligations.

Lopez cites to two claims in his initial petition as providing the basis for relation back for Grounds 2(A, B, C) and 11(X). First, he cites to this claim in Ground 1 of his initial petition: "Counsel unreasonably failed to obtain a complete sworn statement which were [sic] crucial to the motion for new trial based on false testimony given at trial." ECF No. 1 at 5. He contends that this claim was raised in his first-state post-conviction proceeding wherein he presented Maria's written recantation of her trial testimony, which includes statements in her testimony and Montes's testimony that were false. However, neither his state petition nor the written recantation was included as an attachment to his federal initial petition.

Lopez did attach the state district court decision denying post-conviction relief in that proceeding. ECF No. 1 at 39-53 (Exhibit 2 to the initial petition). That decision includes the following excerpt:

> After the trial concluded, Maria Lopez returned to Mexico. Petitioner's former counsel was informed that Maria was willing to recant her testimony. Counsel arranged for a taped video interview of Maria in Mexico. However, counsel did not follow procedures which would have made Maria's testimony admissible in a Nevada court. Petitioner now says that was ineffective assistance of counsel. This view is without merit. The taped interview was considered on the issue of whether a motion for a new trial should have been granted. This court concluded that the new statement did not merit a new trial. Therefore, whether or not the statement was admissible for trial purposes is irrelevant. Counsel's tactical decision is not ineffective assistance of counsel.

*Id*. at 51-52.

The second claim on which Lopez relies is included in Ground 3 of his initial petition and states: "The trial court arbitrarily denied petitioner's motions for new trial and/or that certain material evidence demonstrated the unfairness and impartiality [sic] of the trial." *Id*. at 9. Lopez attached to his initial federal petition the Nevada Supreme Court's decision ruling on the claim, which included the following relevant excerpt:

> Ten months after trial, appellant's attorney observed a TV interview of Arturo Montez.[17] The words "Brother of Maria Lopez" were superimposed on the screen. Appellant's attorney contacted the reporter and obtained an affidavit—signed under strong protest—that during the interview Mr. Montez advised her that he was Maria's brother and Jessica's uncle. Montez submitted an affidavit denying he ever told anyone, including the reporter, that he was related to Maria Lopez.
>
> Based on the conflicting affidavits, appellant's counsel concluded that Montez committed perjury at trial. He simply chose to ignore two other possibilities: that the reporter was mistaken or dissembling. In any event, Lopez filed a motion for a new trial. However, at the hearing Lopez proffered no evidence or witnesses, but relied wholly on the reporter's affidavit. Arturo Montez took the stand and in no uncertain terms testified that he was not the brother of Maria Lopez.
>
> At the hearing for a new trial the judge noted: "It defies credulity to think that, as I have reviewed the transcripts, that they—Mr. Lopez was totally ignorant of a brother who was living right down the street for some time and never knew—they never knew each other, that they never spoke. It just doesn't make any sense, that he is the brother or that perjury has been committed on the stand, and therefore I'm going to deny the motion for a new trial." The trial judge was correct; this issue is without merit.

_____

[17] Mr. Montez was the state's witness who testified of having seen Lopez grab Jessica by the hair and drag her home. He also testified that Lopez responded "no" and shut the door in Mr. Montez' face when Mr. Montez invited the Lopez family over for Thanksgiving.

*Id*. at 37-38.

In the same decision, the Nevada Supreme Court also addressed a claim that the State failed to timely disclose a written report by Ted Salazar that stated Maria had organic brain damage and provided details "as to the extent Maria was abused as a child." *Id*. at 25-27.

Even after considering the facts contained in the attachments to Lopez's initial petition, it cannot be said that his initial pleading contains a core of operative facts that corresponds to the core of operative facts supporting his prosecutorial misconduct claims in Ground 2. The State's alleged failure to timely disclose the Salazar report is the only operative factual allegation in the attachments that corresponds to the operative facts supporting Ground 2. That is not sufficient correspondence for relation back. Simply put, the claims in the initial petition and Ground 2 do not arise out of the same factual episode. *See Ross*, 950 F.3d at 1168 ("Sufficient correspondence exists if the two claims arise out of the same episode-in-suit." (citing *Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005))).

Thus, Grounds 2(A, B, C) do not relate to the initial petition. And, because Ground 11(X) is based on the operative facts supporting Ground 2, it does not relate back either.

2.  Ground 11(M).

In Ground 11(M), Lopez alleges that counsel was ineffective by failing to cross-examine Maria at trial with a note she sent to him while both were confined in jail. He also faults counsel for not using the note to rehabilitate his testimony on redirect examination. Lopez's argues the claim relates back to allegations in his initial petition that trial counsel "did not utilize information and evidence made available to him and did not preserve important documentary evidence" and "unreasonably failed to preserve an exculpatory piece of documentary evidence." ECF No. 1 at 4. He again cites to the state

6

district court decision denying post-conviction relief as providing the factual basis necessary to support relation back.

The cited portion of the state district court decision discusses Lopez's allegation that counsel was ineffective by failing "to save and introduce both a sado-masochistic magazine found in the Lopez apartment and a note written by Maria to Lopez" ECF No. 1 at 44. The excerpt focuses mostly on the magazine and makes no reference to the content of the note or counsel's failure to use it as tool for cross-examination or witness rehabilitation. In addition, the allegations in the initial petition make no reference to the note, much less indicate that the note was the "piece of documentary evidence" counsel failed to preserve.

The initial petition and attachments do not attempt to set out a corresponding factual episode to the one supporting Ground 11(M). Thus, Ground 11(M) does not relate back to the initial petition.

3.  Ground 11(A).

In Ground 11(A), Lopez alleges that trial counsel did not have sufficient resources to put on an adequate defense in the guilt and penalty phases of trial and that he was ineffective by not asking the trial court to appoint second counsel. Lopez's argues the claim relates back to allegations in his initial petition that trial counsel did not adequately prepare for trial. ECF No. 1 at 4. And, again, he cites to the state district court decision denying post-conviction relief to support his relation back argument.

The state court decision merely noted, however, that counsel had cited "lack of funds" as a justification for not pursuing "further investigation" beyond what the court determined was "extensive" pretrial preparation. *Id*. at 43-44. Even with the attached decision, Lopez's initial petition did not set out or attempt to set out "a corresponding factual episode" to the one alleged in Ground 11(A). Thus, Ground 11(A) does not relate back to the initial petition.

\ \ \

\ \ \

        4.  Grounds 11(D) and 16.

In Ground 11(D), Lopez claims counsel was ineffective by failing to seek a change of venue due to pre-trial publicity. Ground 16 is a claim that the trial court erred by failing to change the venue of the trial. Lopez contends the claims relate back to his initial petition because the initial petition contains an allegation that trial counsel failed to conduct an adequate voir dire which corresponds with an ineffective assistance claim discussed in the state district court decision that counsel "should have sought limited media coverage and/or a change of venue." ECF No. 1 at 4, 46.

There is nothing to suggest a connection between the allegation in the initial petition and the cited portion of the state district court decision. Lopez cannot plausibly argue that he attempted to set out the facts supporting Grounds 11(D) and 16 in his initial petition. These grounds do not relate back.

        5.  Grounds 9 and 11(S).

Ground 9 challenges the torture instructions given in the guilt phase and the penalty phase of Lopez's trial. In Ground 11(S), Lopez claims ineffective assistance of counsel premised on counsel's alleged failure to move to strike the depravity of mind and torture aggravating circumstances. Lopez contends the claims relate back to his initial petition because the initial petition contains an allegation that the "trial court erroneously instructed the jury on two aggravating circumstances rather than one" and "[c]ounsel unreasonably failed to object to an instruction which enlarged the statutory factors of aggravation." ECF No. 1 at 5, 9. He further argues that the state district court decision rejecting his challenge to the depravity of mind instruction provided additional factual and legal allegations. *Id*. at 50.

The initial petition and its attachments contain no allegations asserting the invalidity of the torture instruction. They do, however, allege counsel's ineffectiveness for failing to object to the aggravating circumstances instructions. Thus, Ground 9 does not relate back, but Ground 11(S) does.

\ \ \

6.  Ground 8(B).

In Ground 8(B), Lopez contends the involuntary manslaughter instruction used at his trial was unconstitutionally defective because it was inconsistent with the statutory definition of manslaughter. Lopez contends the claim relates back to his initial petition because the initial petition contains an allegation the trial court erred by failing to permit further instruction on the definition of involuntary manslaughter which in turn corresponds to the Nevada Supreme Court's discussion of the alleged error in its direct appeal decision, which is attached to the initial petition. ECF No. 1 at 8-9, 28.

The allegations in the initial petition and attached Nevada Supreme Court opinion involve the trial court's denial of trial counsel's request to supplement the instruction in response to a jury inquiry. Because the allegations supporting Ground 8(B) differ in both time and type from those in the initial pleading and attachments, Ground8(B) does not relate back.

7.  Ground 21(B).

In Ground 21(B), Lopez alleges that his rights under the Confrontation Clause were violated by the admission of statements Maria made to state expert Dr. Paul U. Strauss. Lopez contends the claim relates back to his initial petition because the initial petition contains allegations that trial counsel were ineffective for failing to object to the testimony of Dr. Strauss and that the trial court erred by allowing "the state's expert witness, Dr. Strauss, to give unfounded and prejudicial testimony that Maria Lopez, the state's key witness and petitioner's wife, was beaten and sexually abused by petitioner." ECF No. 1 at 4, 8. He further cites to the state district court's decision discussing his claim that trial counsel was ineffective in failing to object to Dr. Strauss's testimony. *Id* at 48-49.

This court agrees that the initial petition and attached exhibits attempt to set out a corresponding factual episode to the one supporting Ground 21(B). Thus, Ground 21(B) relates back to the initial petition.

IT IS THEREFORE ORDERED that petitioner's motion for partial reconsideration (ECF No. 217) is GRANTED in part and DENIED in part. Contrary to this court's prior ruling, Grounds 11(S) and 21(B) relate back to Lopez's initial federal petition and, therefore, are not time-barred. In all other respects, the court affirms its order of September 27, 2018 (ECF No. 182), with respect to the timeliness of Lopez's claims.

IT IS FURTHER ORDERED that respondents shall have **30 days** from the date on which this order is entered within which to supplement their answer to address Grounds 11(S) and 21(B) in petitioner's second amended petition (ECF No. 126). Petitioner shall have **60 days** following service of the supplement to file and serve a reply to respondents' answer and supplements. In all other respects, the scheduling of this matter is governed by the scheduling order entered June 28, 2016 (ECF No. 124).

IT IS FURTHER ORDERED that respondents' motions for extension of time (ECF Nos. 219/220/222) are GRANTED *nunc pro tunc* as of their respective filing dates. Petitioner's unopposed motion to stay (ECF No. 225) is DENIED as moot in light of the foregoing.

DATED THIS 29th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE